UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JENNIE ROSENBRAHN,<br>NANCY ROSENBRAHN,<br>JEREMY COLLER,<br>CLAY SCHWEITZER,<br>LYNN SERLING-SWANK,<br>MONICA SERLING-SWANK,<br>KRYSTAL COSBY,<br>KAITLYNN HOERNER,<br>BARBARA WRIGHT,<br>ASHLEY WRIGHT,<br>GREG KNIFFEN, and<br>MARK CHURCH, | 4:14-CV-04081-KES |
|     Plaintiffs,<br><br>  vs.<br><br>DENNIS DAUGAARD, in his official<br>capacity as Governor;<br>MARTY JACKLEY, in his official<br>capacity as Attorney General;<br>DONEEN HOLLINGSWORTH, in her<br>official capacity as Secretary of Health;<br>TREVOR JONES, in his official capacity<br>as Secretary of Public Safety; and<br>CAROL SHERMAN, in her official<br>capacity as Brown County Register of<br>Deeds;<br><br>    Defendants. | ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS |

Defendants move the court to dismiss all claims. Docket 10. Plaintiffs resist that motion. The court heard oral argument on October 17, 2014. For the following reasons, the court grants in part and denies in part the motion to dismiss.

## BACKGROUND

The facts, according to the complaint (Docket 1), are as follows:

In 1996, the South Dakota legislature adopted SDCL 25-1-1, which declares in pertinent part, "Marriage is a personal relation, between a man and a woman . . . ." Four years later, the South Dakota legislature amended SDCL 25-1-38 to clarify that any marriage entered into in another state "except a marriage contracted between two persons of the same gender" is valid in South Dakota. In 2006, South Dakota voters approved Amendment C to the South Dakota Constitution, which reads:

> Only marriage between a man and a woman shall be valid or recognized in South Dakota. The uniting of two or more persons in a civil union, domestic partnership, or other quasi-marital relationship shall not be valid or recognized in South Dakota.

S.D. Const. art. 21 § 9.

Plaintiffs in this matter are six couples impacted by South Dakota's marriage laws. Nancy and Jennie Rosenbrahn, both females, live in Rapid City, South Dakota. They have lived together for nearly thirty years and have numerous children and grandchildren. When they decided to marry, they were unable to obtain a marriage license in South Dakota. As a result, the Rosenbrahns traveled to Minnesota and were validly married according to that state's laws. South Dakota does not recognize their marriage.

Jeremy Coller and Clay Schweitzer also reside in Rapid City, South Dakota. They are a same-sex couple. Jeremy and Clay also applied for a South Dakota marriage license and were denied. They were married in Iowa in May 2014.

Lynn and Monica Serling-Swank live in Brandon, South Dakota, and have been in a same-sex relationship for over twelve years. They entered into a civil union in Connecticut in 2006, which was converted into a marriage in 2010. Subsequently, they moved to South Dakota to be closer to family. South Dakota does not recognize their marriage.

Krystal Cosby and Kaitlynn Hoerner reside in Aberdeen, South Dakota. They met in 2012 and have one child together, although Kaitlynn is not officially recognized as a parent because they are a same-sex couple. They also applied for a marriage license in South Dakota but were denied.

Barbara and Ashley Wright also live in Aberdeen. They are a same-sex couple. They met in 2012, and were lawfully married in Minnesota on September 20, 2013. They have six children from previous relationships, and Ashley will give birth to another in the fall of 2014. Their marriage is not recognized by South Dakota, nor is Barbara's status as a parent of their expected child.

Greg Kniffen and Mark Church live in Sioux Falls, South Dakota. They have been together as a same-sex couple for eleven years, and they were legally married in Minnesota on October 11, 2013. South Dakota does not recognize their marriage.

Defendants in this matter are all officials for the state of South Dakota. Dennis Daugaard is the governor of South Dakota and enforces and executes all laws of the state. Marty Jackley is the Attorney General and is the chief legal officer of the state. Doneen Hollingsworth is the Secretary of Health and

oversees South Dakota's vital records registration system. Trevor Jones is the Secretary of Public Safety and oversees South Dakota's driver's license service centers. Carol Sherman is the Brown County Register of Deeds, whose duties include issuing marriage licenses. Defendants have all been named as defendants in their official capacities due to their roles in enforcing South Dakota's same-sex marriage ban.

On May 22, 2014, plaintiffs filed a complaint alleging that South Dakota's same-sex marriage ban deprives them of their constitutional rights to equal protection, due process, and travel. Plaintiffs seek declaratory and injunctive relief. Docket 1. Defendants moved to dismiss the complaint. Docket 10. Plaintiffs then moved for summary judgment (Docket 20) and filed a joint brief in support of that motion and in opposition to the motion to dismiss. Docket 23; Docket 24. The court granted defendants' motion to extend the deadline for its response to plaintiffs' summary judgment motion until ten days after the court rules on the pending motion to dismiss.

## LEGAL STANDARD

Rule 8 requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Hamilton v. Palm*, 621 F.3d 816,

817 (8th Cir. 2010) (clarifying that "*Twombly* and *Iqbal* did not abrogate the notice pleading standard of Rule 8(a)(2)").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court determines plausibility by considering only the materials in the pleadings and exhibits attached to the complaint, drawing on experience and common sense and viewing the plaintiff's claim as a whole. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)). At the motion to dismiss stage, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012)).

Plaintiffs submitted fifteen exhibits in conjunction with their motion for summary judgment. *See* Docket 21. A motion made pursuant to Rule 12(b)(6) is limited to the initial pleadings. *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 799-800 (8th Cir. 2011). "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . . All parties must be

5

given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

If material beyond the pleadings is offered in conjunction with a Rule 12(b)(6) motion, the court may convert the motion to a motion for summary judgment, or it may "reject [any material outside the pleadings] or simply not consider it." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004) [hereinafter Wright & Miller]; *see also Casazza v. Kiser*, 313 F.3d 414, 417-18 (8th Cir. 2002) (reiterating that a district court does not convert a Rule 12(b)(6) motion to a motion for summary judgment if the court does not rely upon matters outside the pleadings). "In adjudicating Rule 12(b) motions, courts are not strictly limited to the four corners of complaints." *Dittmer Props. L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (citing *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011)). " '[T]he court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.' " *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). The court may also consider matters incorporated by reference into the complaint without converting a Rule 12(b)(6) motion to a summary judgment motion. *Id.* at 931 n.3 (quoting 5B Wright & Miller § 1357). The decision to convert the motion or to exclude the material beyond the pleadings is wholly discretionary. 5C Wright & Miller § 1366.

In determining this motion, the court has considered the complaint, the text of the relevant South Dakota statutes and constitutional provision, and the briefs[1] and oral arguments of the parties. Because the court has limited the materials considered to the pleadings and other materials embraced by the pleadings, defendants' motion to dismiss is not converted to a motion for summary judgment.

## DISCUSSION

Recently, many federal courts have seen challenges centering on the constitutional validity of state same-sex marriage bans. With few exceptions, those courts have found that denying same-sex couples the right to marry violates the Constitution. Some courts have recognized that same-sex marriage bans impermissibly deprive same-sex couples of the fundamental right to marry. *See, e.g.*, *Bostic v. Schaefer*, 760 F.3d 352, 384 (4th Cir. 2014) ("The choice of whether and whom to marry is an intensely personal decision that alters the course of an individual's life. Denying same-sex couples this choice prohibits them from participating fully in our society, which is precisely the type of segregation that the Fourteenth Amendment cannot countenance."). Other courts have found that same-sex marriage bans classify citizens in a way that has no rational relationship to a legitimate government objective. *See, e.g.*, *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014) (holding that same-sex marriage bans in Indiana and Wisconsin denied same-sex couples equal protection of

---

[1] Plaintiffs' brief is a joint brief opposing defendants' motion to dismiss and supporting plaintiffs' motion for summary judgment. The court has considered the parts of the brief relevant to the motion to dismiss.

the law because they classified citizens in a way that bore no rational relationship to any legitimate government purpose). Whether decided under the framework of due process or equal protection, federal courts have recognized that same-sex marriage bans pose important constitutional questions and present a claim upon which relief can be granted to same-sex couples.

## I.   Precedent

Defendants argue that this court should not follow the other federal courts which recognize that challenges to same-sex marriage bans state a claim for relief because specific caselaw in the Eighth Circuit prevents such claims. Defendants' argument centers on two decisions: *Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006); and *Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971), *appeal dismissed by Baker v. Nelson*, 409 U.S. 810 (1972).

In *Bruning*, three public interest groups whose members included gay and lesbian citizens challenged an amendment to the Nebraska Constitution that prohibited and refused to recognize same-sex marriage. *Bruning*, 455 F.3d at 863. Relying on *Romer v. Evans*, 517 U.S. 620 (1996),[2] the plaintiffs argued that the amendment deprived same-sex couples of equal footing in the political

---

[2] In *Romer*, the Supreme Court held that a Colorado law which barred state and local governments from allowing sexual orientation to be the basis for a claim of minority or protected status or discrimination was "a status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests; it is a classification of persons undertaken for its own sake, something the Equal Protection Clause does not permit." *Romer*, 517 U.S. at 635.

arena and created an insurmountable barrier to their participation in the political process. *Id.* at 865. The Eighth Circuit rejected the plaintiffs' argument for heightened scrutiny, noting that "there is no fundamental right to be free of the political barrier a validly enacted constitutional amendment erects." *Id.* at 868. The *Bruning* plaintiffs "d[id] not assert a right to marriage or same-sex unions." *Id.* The Eighth Circuit held that, for equal protection purposes, sexual orientation is not a suspect classification. *Id.* at 866. Thus, the panel applied the highly deferential rational-basis review standard and found that Nebraska's constitutional amendment was "rationally related to the government interest in 'steering procreation into marriage.' " *Id.* at 867.

*Baker* was a mandatory appeal to the United States Supreme Court of a decision by the Minnesota Supreme Court, pursuant to 28 U.S.C. § 1257(2) (repealed).[3] Two men applied for a marriage license in Hennepin County and were denied on the sole grounds that they were of the same gender. *Baker*, 191 N.W.2d at 185. The Minnesota Supreme Court interpreted Minnesota's statute authorizing marriage licenses as only permitting marriage between a man and a woman, and then held that such a classification did not violate the due process or equal protection guarantees of the Constitution. *Id.* at 186-87. On

---

[3] 28 U.S.C. §1257(2) provided for mandatory review in the Supreme Court when a case involved the validity of a state statute contested under federal law and the highest court of the state upheld the state statute. *See* 28 U.S.C.A. § 1257 commentary on 1988 revision. This law was repealed in 1988 by the Supreme Court Case Selections Act. *See* Public Law No. 100-352 (effective June 27, 1988).

appeal, the United States Supreme Court stated only that "[t]he appeal is dismissed for want of a substantial federal question." *Baker*, 409 U.S. at 810.

Defendants argue that *Bruning*, which applied rational basis review to Nebraska's constitutional amendment prohibiting same-sex marriage, forecloses a finding that sexual orientation is a suspect class or that same-sex marriage is a fundamental right. Similarly, defendants argue that by dismissing the appeal in *Baker* "for want of a substantial federal question," the Supreme Court held that same-sex marriage is not a fundamental right. Read together, defendants contend that the court must apply rational basis review, and because the Eighth Circuit found a rational basis for an almost identical constitutional amendment in *Bruning*, there is no set of facts that could entitle plaintiffs to relief.

### A.   *Baker*

The summary dismissal in *Baker* is precedential and is a decision on the merits. *See Hicks v. Miranda*, 422 U.S. 332, 344 (1975); *McConnell v. Nooner*, 547 F.2d 54, 56 (8th Cir. 1976) (stating that *Baker* "constitutes an adjudication of the merits which is binding on the lower federal courts"). The question presented in *Baker*, "whether same-sex marriage may be constitutionally restricted by the states," is the same question presented in this case. *See Windsor v. United States*, 699 F.3d 169, 178 (2d Cir. 2012) *aff'd*, 133 S. Ct. 2675 (2013). " '[U]nless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so *except when doctrinal*

10

developments indicate otherwise[.]' " *Hicks*, 422 U.S. at 344 (quoting *Port Auth. Bondholders Protective Comm. v. Port of New York Auth.*, 387 F.2d 259, 263 n.3 (2d Cir. 1967) (emphasis added)).

On appeal in *Windsor*, the Supreme Court was presented with a challenge to section 3 of the Defense of Marriage Act (DOMA), which defined marriage as between one man and one woman for purposes of federal law. *United States v. Windsor*, 133 S. Ct. 2675, 2683 (2013). As the Supreme Court noted, DOMA was a federal policy that withdrew protections granted by a state to a class of people historically disadvantaged on an issue traditionally left to states to regulate. *See id.* at 2692 ("The State's power in defining the marital relation is of central relevance in this case quite apart from principles of federalism. Here the State's decision to give this class of persons the right to marry conferred upon them a dignity and status of immense import. When the State used its historic and essential authority to define the marital relation in this way, its role and its power in making the decision enhanced the recognition, dignity, and protection of the class in their own community.").

Although the opinion discussed principles of federalism at length, the underpinning of the Supreme Court's decision was "whether the resulting injury and indignity is a deprivation of an essential part of the liberty protected by the Fifth Amendment." *Id.* "The Constitution's guarantee of equality 'must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *Id.* at 2693 (quoting *Dep't of Agric. v. Moreno*, 413 U.S. 528, 534-35 (1973)). The Supreme

Court stated that DOMA's effect of making a subset of marriages unequal from others "places same-sex couples in an unstable position of being in a second-tier marriage. The differentiation demeans the couple *whose moral and sexual choices the Constitution protects*[.]" *Id.* at 2694 (emphasis added) (citing *Lawrence v. Texas*, 539 U.S. 558 (2003)). Ultimately, the Court found that even though Congress has the power to "design laws to fit its own conception of sound national policy, it cannot deny the liberty protected by the Due Process Clause of the Fifth Amendment. . . . This requires the Court to hold, as it now does, that DOMA is unconstitutional as a deprivation of the liberty of the person protected by the Fifth Amendment of the Constitution." *Id.* at 2695.[4] In doing so, the Court found that there was no legitimate purpose sufficient to overcome the negative impact DOMA had on same-sex couples. *Id.* at 2696.

Following the Supreme Court's decision in *Windsor*, numerous courts have questioned whether *Baker* is still binding. This court has the benefit of reviewing those decisions. A significant majority of courts have found that *Baker* is no longer controlling in light of the doctrinal developments of the last forty years.[5] Those courts have relied on Supreme Court decisions postdating

---

[4] The Court noted at the end of its opinion that its holding was limited to lawful marriages that states had sought to protect. *Windsor*, 133 S. Ct. at 2696. Nonetheless, the Court's elucidation of constitutional rights applies equally to the states because, even though the states have the general power to regulate domestic relations, they must still comply with the Constitution. *See id.* at 2691 (citing *Loving v. Virginia*, 388 U.S. 1 (1967)).

[5] *See Latta v. Otter*, Nos. 14-35420, 14-35421, 12-17668, 2014 WL 4977682, at *3 (9th Cir. Oct. 7, 2014) ("As any observer of the Supreme Court cannot help but realize, this case and others like it present not only substantial

but pressing federal questions."); *Baskin*, 766 F.3d at 660 ("*Baker* was decided in 1972—42 years ago and the dark ages so far as litigation over discrimination against homosexuals is concerned. Subsequent decisions . . . make clear that *Baker* is no longer authoritative."); *Bostic*, 760 F.3d at 373-75 ("In light of the Supreme Court's apparent abandonment of *Baker* and the significant doctrinal developments that occurred after the Court issued its summary dismissal in that case, we decline to view *Baker* as binding precedent . . . ."); *Kitchen v. Herbert*, 755 F. 3d 1193, 1208 (10th Cir. 2014) ("Although reasonable judges may disagree on the merits of the same-sex marriage question, we think it is clear that doctrinal developments foreclose the conclusion that the issue is, as *Baker* determined, wholly insubstantial."); *Windsor*, 699 F.3d at 178 ("Even if *Baker* might have had resonance for Windsor's case in 1971, it does not today."), *aff'd*, 133 S. Ct. 2675 (2013); *Brenner v. Scott*, 999 F. Supp. 2d 1278, 1291 (N.D. Fla. 2014) ("[I]ntervening doctrinal developments . . . have sapped *Baker's* precedential force."); *Love v. Beshear*, 989 F. Supp. 2d 536, 541-42 (W.D. Ky. 2014) ("Today, it is difficult to take seriously the argument that *Baker* bars Plaintiffs' challenge. Since 1972, a virtual tidal wave of pertinent doctrinal developments has swept across the constitutional landscape.") *rev'd sub nom. DeBoer v. Snyder*, 2014 U.S. App. LEXIS 21191 (6th Cir. Nov. 6, 2014); *Baskin v. Bogan*, 12 F. Supp. 3d 1144, 1155 (S.D. Ind. 2014) ("These developments strongly suggest, if not compel, the conclusion that *Baker* is no longer controlling and does not bar the present challenge to Indiana's laws."), *aff'd*, 766 F.3d 648 (7th Cir. 2014); *Wolf v. Walker*, 986 F. Supp. 2d 982, 990 (W.D. Wis. 2014) ("It would be an understatement to say that the Supreme Court's jurisprudence on issues similar to those raised in *Baker* has developed substantially since 1972."), *aff'd sub nom. Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014); *Whitewood v. Wolf*, 992 F. Supp. 2d 410, 419 (M.D. Pa. 2014) ("[W]e . . . no longer consider *Baker v. Nelson* controlling due to the significant doctrinal developments in the four decades that have elapsed since it was announced by the Supreme Court."); *Geiger v. Kitzhaber*, 994 F. Supp. 2d 1128, 1133 n.1 (D. Or. 2014) ("[T]he Court's summary order in *Baker* yields no lasting precedential effect in 2014."); *Latta v. Otter*, No. 1:13-cv-00482-CWD, 2014 WL 1909999, at *9 (D. Idaho May 13, 2014) ("Consistent with the findings of its sister courts, the Court concludes that *Baker* is not controlling and does not bar review of Plaintiffs' claims."), *aff'd*, 2014 WL 4977682 (9th Cir. Oct. 7, 2014); *DeBoer v. Snyder*, 973 F. Supp. 2d 757, 773 n.6 (E.D. Mich. 2014) ("*Baker* no longer has any precedential effect.") *rev'd* 2014 U.S. App. LEXIS 21191 (6th Cir. Nov. 6, 2014); *De Leon v. Perry*, 975 F. Supp. 2d 632, 647 (W.D. Tex. 2014) ("[S]ubsequent doctrinal and societal developments since 1972 compel this Court to conclude that the summary dismissal in *Baker* is no longer binding, and that the issue of same-sex marriage now presents a substantial federal question."); *Bostic v. Rainey*, 970 F. Supp. 2d 456, 469 (E.D. Va. 2014) ("This Court concludes that doctrinal developments . . . compel the conclusion that *Baker* is no longer binding."), *aff'd sub nom. Bostic v.*

*Baker*, particularly *Romer*, *Lawrence*, and *Windsor*, to conclude that the question summarily dismissed in *Baker* is now a substantial federal question.

Nonetheless, some courts have recently concluded that *Baker* is still binding precedent. Most recently, a panel of the Sixth Circuit Court of Appeals overturned district court decisions in four states which had struck down same-sex marriage laws. *DeBoer v. Snyder*, Nos. 14-1341; 3057; 3464; 5291; 5297; 5818, 2014 U.S. App. LEXIS 21191 (6th Cir. Nov. 6, 2014). The Sixth Circuit stated that applying the doctrinal developments exception laid out in *Hicks* "would be a groundbreaking development of its own." *Id.* at *29. Because summary dismissals are decisions on the merits, the Sixth Circuit concluded:

> Just two scenarios, then, permit us to ignore a Supreme Court decision, whatever its form: when the Court has overruled the decision by name (if, say, *Windsor* had directly overruled *Baker*) or when the Court has overruled the decision by outcome (if, say, *Hollingsworth* [*v. Perry*, 133 S. Ct. 2652 (2013)] had invalidated the California law without mentioning *Baker*).

Id. at *30. While that may be true with respect to full opinions of the Supreme Court, a summary disposition "is not here 'of the same precedential value as would be an opinion of this Court treating the question on the merits.' " *Tully v. Griffin, Inc.*, 429 U.S. 68, 74 (1976) (quoting *Edelman v. Jordan*, 415 U.S. 651,

---

*Schaefer*, 760 F.3d 352 (4th Cir. 2014); *McGee v. Cole*, 993 F. Supp. 2d 639, 650 (S.D. W. Va. 2014) ("Doctrinal developments since *Baker*, however, do justify a finding that *Baker* is nonbinding."); *Bishop v. U.S. ex rel. Holder*, 962 F. Supp. 2d 1252, 1276 (N.D. Okla. 2014) (describing doctrinal developments since *Baker* and concluding "this is the type of erosion over time that renders a summary dismissal of no precedential value"), *aff'd sub nom. Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014); *Kitchen v. Herbert*, 961 F. Supp. 2d 1181, 11194-95 (D. Utah 2013) ("[S]everal doctrinal developments . . . demonstrate that the Court's summary dismissal in *Baker* has little if any precedential effect today."), *aff'd*, 755 F. 3d 1193 (10th Cir. 2014).

671 (1974)). The Sixth Circuit's reading of the doctrinal developments exception is too narrow and would effectively eliminate that exception by requiring either an explicit or implicit overruling of a prior decision. Furthermore, it is difficult to reconcile the Supreme Court's statement in *Windsor* that the Constitution protects the moral and sexual choices of homosexual couples, *Windsor*, 133 S. Ct. at 2694, with the idea that state laws prohibiting same-sex marriage do not present a substantial federal question. Thus, the Sixth Circuit's reasoning is not as persuasive as the reasoning of the Second, Fourth, Seventh, Ninth, and Tenth Circuits on this issue.

In *Massachusetts v. U.S. Department of Health and Human Services*, 682 F.3d 1 (1st Cir. 2012), the First Circuit was presented with a challenge to DOMA. The court cited *Baker* and concluded that "*Baker* does not resolve our own case but it does limit the arguments to ones that do not presume or rest on a constitutional right to same-sex marriage." *Id.* at 8. The court applied rational basis review and concluded, "without resort to suspect classifications or any impairment of *Baker*, that the rationales offered do not provide adequate support for section 3 of DOMA." *Id.* at 15. *Massachusetts v. HHS* was decided before *Windsor*, so it did not take into account the significant doctrinal development contained in *Windsor*. Additionally, the First Circuit did not discuss the doctrinal developments exception, likely because the court reached its conclusion without confronting the question of *Baker's* viability. For those reasons, *Massachusetts v. HHS* is not persuasive on this issue.

Recently, a district court in Puerto Rico found that *Baker* still controlled. *See Conde-Vidal v. Garcia-Padilla*, Civil No. 14-1253 (PG), 2014 WL 5361987, at *4-10 (D.P.R. Oct. 21, 2014). Because Puerto Rico is in the First Circuit, the Puerto Rico district court determined that it was bound to follow *Massachusetts v. HHS*. *See id.* at *6. This court is not in the First Circuit and as a result is not bound by *Massachusetts v. HHS*. Additionally, because *Massachusetts v. HHS* was decided before *Windsor*, it is not as persuasive as the authority that concludes that *Baker* is no longer controlling.[6] Other courts that upheld same-sex marriage bans have done so without addressing *Baker*. *See Robicheaux v. Caldwell*, 2 F. Supp. 3d 910, 922 n.14 (E.D. La. 2014) ("The Court need not enter the differing contentions about the viability of *Baker v. Nelson*."); *Merritt v. Attorney General*, Civil Action No. 13-00215-BAJ-SCR, 2013 WL 6044329, at *2 (M.D. La. Nov. 14, 2013) (stating, without explanation, that "the Constitution does not require States to permit same-sex marriages." (citing *Baker*, 409 U.S. 810)).

This court agrees with the five courts of appeals and numerous district courts listed above which found that recent Supreme Court decisions constitute doctrinal developments which render *Baker* without precedential value. That conclusion is strengthened by the Supreme Court's silence on *Baker's* continued viability. Although the Second Circuit held in *Windsor* that

---

[6] Other cases relying on *Massachusetts v. HHS* are equally unpersuasive because they do not account for the impact of *Windsor*. *See Kitchen*, 755 F.3d at 1231-33 (Kelly, J., dissenting) (citing *Massachusetts v. HHS* as support for the conclusion that subsequent doctrinal developments have not undermined *Baker's* force).

*Baker* did not control, see *Windsor*, 699 F.3d at 178, the Supreme Court's majority opinion and the dissents failed to discuss *Baker* or its application to this case. If the Supreme Court believed that *Baker* was still controlling, the Court could simply and quickly have disposed of *Windsor*.

Similarly, in *Hollingsworth*, a companion case to *Windsor*, the Supreme Court concluded that proponents of a California law prohibiting same-sex marriage did not have standing and consequently the Court did not reach the merits of the case. Notably, the Court did not dismiss the case for want of a substantial federal question. In fact, during oral arguments in *Hollingsworth*, Justice Ginsburg stated, "Mr. Cooper, *Baker v. Nelson* was 1971. The Supreme Court hadn't even decided that gender-based classifications get any kind of heightened scrutiny. . . . And the same sex intimate conduct was considered criminal[7] in many States in 1971, so I don't think we can extract much in *Baker v. Nelson*." *Hollingsworth v. Perry*, No. 12-144, 2013 WL 1212745, at *12 (U.S. Mar. 26, 2013) (oral argument transcript) (footnote added).

Defendants contended during oral argument that the Eighth Circuit adopted *Baker* in *Bruning*, and that *Baker* is therefore binding on this court even though other courts found that *Baker* was displaced by subsequent doctrinal developments. *Bruning* cites *Baker* once in its conclusion section:

> In the nearly one hundred and fifty years since the Fourteenth
> Amendment was adopted, to our knowledge no Justice of the

---

[7] Not only was such conduct considered criminal, but "[i]n 1973, the American Psychiatric Association still defined homosexuality as a mental disorder in the Diagnostic and Statistical Manual of Mental Disorders (DSM-II)[.]" *Kitchen*, 961 F. Supp. 2d at 1200.

17

Supreme Court has suggested that a state statute or constitutional provision codifying the traditional definition of marriage violates the Equal Protection Clause or any other provision of the United States Constitution. Indeed, in *Baker v. Nelson*, when faced with a Fourteenth Amendment challenge to a decision by the Supreme Court of Minnesota denying a marriage license to a same-sex couple, the United States Supreme Court dismissed "for want of a *substantial* federal question."

*Bruning*, 455 F.3d at 870 (emphasis in original) (citation omitted). This passage in *Bruning* merely recognizes the decision in *Baker*. Absent from the *Bruning* opinion, however, is any discussion of the continued validity of *Baker* or the doctrinal development exception.[8] Despite defendants' contention, *Bruning* does not compel this court to follow *Baker*.

The Supreme Court's equal protection and due process doctrines have evolved substantially since *Baker* was decided, particularly those doctrines as applied to homosexual citizens. As has been recognized by the Second, Fourth, Seventh, Ninth, and Tenth Circuits and numerous district courts following *Windsor*, this court concludes that *Baker* is no longer binding authority.

**B.   *Bruning***

Prior to *Windsor*, the Eighth Circuit addressed the constitutionality of a Nebraska constitutional amendment prohibiting same-sex marriage. *See Bruning*, 455 F.3d at 863. District courts within the Eighth Circuit are bound to follow decisions of the Eighth Circuit Court of Appeals. *See, e.g., Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003).

---

[8] Even if *Bruning* discussed the doctrinal development exception, that discussion would be incomplete because *Bruning* was decided in 2006, seven years before *Windsor* fundamentally altered the landscape of the same-sex marriage debate.

18

*Bruning* was framed as an equal protection case based on a fundamental right of access to the political process. The Eighth Circuit held that even though access to the political process is a fundamental right, "there is no fundamental right to be free of the political barrier a validly enacted constitutional amendment erects." *Bruning*, 455 F.3d at 868. The panel based its conclusion on the reality that "[i]n a multi-tiered democracy, it is inevitable that interest groups will strive to make it more difficult for competing interest groups to achieve contrary legislative objectives" and that "chaos . . . would result if all enactments that allegedly deprive a group of 'equal' political access must survive the rigors of strict judicial scrutiny." *Id.* at 866. The Eighth Circuit also noted that sexual orientation was not a suspect class under existing Supreme Court precedent. *Id.* at 866-67. Because there was no suspect classification and no fundamental right at stake, the Eighth Circuit applied rational basis review and upheld Nebraska's constitutional provision. *Id.* at 867-68.

*Bruning* holds that, under the Eighth Circuit's interpretation of Supreme Court precedent, sexual orientation is not a suspect class. But that holding does not resolve the matter before this court. More relevant to the case at bar is what *Bruning* does not address: due process or a fundamental right to marriage. The Eighth Circuit directly stated in *Bruning* that "[a]ppellees do not assert a right to marriage or same-sex unions." *Id.* at 865. Consequently, *Bruning* does not address whether marriage, or same-sex marriage, is a

19

fundamental right.[9] Therefore, *Bruning* does not compel this court to apply only rational basis review. Because the court is not bound to apply rational basis review, *Bruning's* determination that Nebraska's constitutional provision was rationally related to legitimate government objectives does not demonstrate that plaintiffs here are not entitled to relief.

Defendants argue that because *Bruning* applied rational basis review to a constitutional provision prohibiting same-sex marriage, the panel impliedly concluded that there is no fundamental right to same-sex marriage. *See* Docket 11 at 6. But that reading of *Bruning* is far too broad. *Bruning's* discussion of the fundamental right at hand is expressly limited to the fundamental right of access to the political process. *Bruning*, 455 F. 3d at 865. The Eighth Circuit's application of rational basis review was premised upon its finding that there was not a fundamental right to be free of validly enacted political barriers, not that there was not a fundamental right to marry. *Id.* at 868. Additionally, the Eighth Circuit's rejection of strict scrutiny was based on the difficulty inherent in heightened judicial review of all political access questions. That rationale does not apply to reviewing a right to marry. Given the clear framing of the

---

[9] In fact, *Bruning* only addresses marriage as a "package of government benefits and restrictions that accompany the institution of formal marriage" which the state "may rationally choose not to expand in wholesale fashion" as a matter of legislative convenience. *Bruning*, 455 F.3d at 868. This passage makes it clear that the Eighth Circuit was not considering marriage as a fundamental right, as described in *Loving*, 388 U.S. at 12 ("The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness . . . ."), but was only examining marriage as any other benefit which can be extended or denied through the political process.

20

right at stake in *Bruning* and the reasoning applied by the panel, *Bruning* does not extend to holding that there is no fundamental right to marriage.

*Bruning* is not dispositive of the central issue before this court, namely, whether plaintiffs can establish a deprivation of their due process or equal protection rights based on a fundamental right to marriage. Accordingly, *Bruning* does not preclude plaintiffs from relief as a matter of law.

## II.    Due Process

"[A]ll fundamental rights comprised within the term liberty are protected by the Federal Constitution from invasion by the States." *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992) (quotation omitted). The Due Process Clause "forbids the government to infringe certain fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (emphasis in original) (internal quotations omitted). A fundamental right is a right that is "objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). In evaluating a substantive due process claim, a court must provide a "careful description of the asserted fundamental liberty interest" to minimize the subjectivity inherent in judicial review of due process. *Id.* at 721.

Plaintiffs argue that they have a fundamental right to marry, and that South Dakota law deprives them of that fundamental right. Defendants argue

that *Bruning* and *Baker* stand for the proposition that there is no fundamental right to same-sex marriage and that those decisions compel this court to apply rational basis review. Furthermore, defendants argue that *Bruning* found there is a rational basis for such laws, which finding is also binding on this court. Because *Baker* no longer has precedential value, and because *Bruning* did not address either due process or a fundamental right to marriage, plaintiffs are not consigned to rational basis review and have a plausible claim for relief with respect to their due process argument.

## III.   Equal Protection

The Fourteenth Amendment requires that states afford all citizens the equal protection of the laws. U.S. Const. amend. XIV. "As a threshold matter, in order '[t]o state an equal protection claim, [a plaintiff] must have established that he was treated differently from others similarly situated to him.' " *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) (quoting *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998)). If a statute treats citizens differently based on a suspect classification or involves a fundamental right, the challenged law receives heightened scrutiny. All other classifications will be upheld "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993).

### A.     Fundamental Right

If a classification "impinge[s] upon the exercise of a fundamental right," the Equal Protection Clause requires "the State to demonstrate that its classification has been precisely tailored to serve a compelling governmental interest." *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982) (quotation omitted). For reasons stated with respect to plaintiffs' due process claim, the complaint states a plausible equal protection claim based on the alleged deprivation of a fundamental right where plaintiffs allege the classification is not precisely tailored to serve a compelling governmental interest.

### B.     Gender

When a law is based on a gender classification, "[t]he State must show 'at least that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives.' " *United States v. Virginia*, 518 U.S. 515, 533 (1996) (quoting *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)).

Defendants argue that the complaint fails to establish a plausible claim for relief based on gender discrimination because South Dakota law simply does not classify individuals based on gender. Docket 11 at 14-15. But an express classification is not necessary to state a claim for relief. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979) ("When a statute gender-neutral on its face is challenged on the ground that its effects upon women are disproportionably adverse, a twofold inquiry is thus appropriate. The first

question is whether the statutory classification is indeed neutral in the sense that it is not gender-based. If the classification itself . . . is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination.") (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)).

The fact that a statute imposes identical disabilities on men and women does not foreclose a claim that the statute discriminates based on gender. *See Latta v. Otter*, 2014 WL 4977682, at *16 (9th Cir. Oct. 7, 2014) (Berzon, J., concurring) ("In concluding that these laws facially classify on the basis of gender, it is of no moment that the prohibitions treat men as a class and women as a class equally and in that sense give preference to neither gender, as the defendants fervently maintain." (internal quotations and footnote omitted)). In *Loving,* the Supreme Court rejected a similar argument that anti-miscegenation statutes did not discriminate based on race because the statute applied equally to blacks and whites. *See Loving v. Virginia*, 388 U.S. 1, 8 (1967). Because South Dakota's law, for example, prohibits a man from marrying a man but does not prohibit that man from marrying a woman, *see Kitchen v. Herbert*, 961 F. Supp. 2d 1181, 1206 (D. Utah 2013), the complaint has stated a plausible claim for relief.

At this stage—a motion to dismiss—the court finds that the complaint sufficiently states a claim for relief because it plausibly shows a classification related to gender. Even though several courts have rejected the argument that same-sex marriage bans discriminate based on gender because the plaintiffs

did not present sufficient evidence of invidious gender discrimination to prevail on their claim,[10] the complaint should still survive a Rule 12(b)(6) motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable.").

### C.    Sexual Orientation

*Bruning* holds that sexual orientation is not a suspect classification. *See Bruning*, 455 F.3d at 866-67. But even if that is the correct standard and no other basis for the application of heightened scrutiny is proven, plaintiffs would still be entitled to relief if they could show that the challenged laws bear no rational relationship to a legitimate government purpose. At this point in the litigation, defendants have articulated no potential legitimate purpose. Instead, they rely on the finding in *Bruning* that the Nebraska law survived rational basis review. Even though the Eighth Circuit found that Nebraska's constitutional provision survived rational basis review, that conclusion does not compel a finding that South Dakota's laws are, as a factual matter,

---

[10] *See Baskin*, 2014 WL 2884868, at *11 ("[T]he court finds no evidence of an invidious gender-based discrimination here."); *Wolf*, 986 F. Supp. 2d. at 1008 (rejecting a gender discrimination theory because "the intent of laws banning same-sex marriage is not to suppress females or males as a class"); *Whitewood*, 992 F. Supp. 2d at 425 n.9 (finding that "the intentional discrimination occurring in this case has nothing to do with gender-based prejudice or stereotypes"); *Geiger*, 994 F. Supp. 2d at 1140 ("There is no such invidious gender-based discrimination here."); *Latta*, 2014 WL 1909999, at *15 ("[T]here is no evidence that [Idaho's marriage laws] were motivated by a gender discriminatory purpose."); *Sevcik v. Sandoval*, 911 F. Supp. 2d 996, 1005 (D. Nev. 2012) (applying the level of scrutiny applicable to sexual orientation classifications because there was no indication of any gender-based animus).

rationally related to the same purpose.[11] Such a determination should not be made at the motion to dismiss stage.

## IV. Right to Travel

The Supreme Court has described the right to travel as being comprised of at least three components:

> [The right to travel] protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

*Saenz v. Roe*, 526 U.S. 489, 500 (1999). "Because travel is a fundamental right, 'any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional.' " *Minn. Senior Fed'n v. United States*, 273 F.3d 805, 809 (8th Cir. 2001) (emphasis in original) (quoting *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969)).

Plaintiffs argue that South Dakota has penalized them for electing to travel by stripping them of the marital status they obtained in other states. Thus, plaintiffs contend, same-sex marriage bans create:

> *[T]wo Americas* for married same-sex couples—a group of states where it is safe for them to travel or move with their families and a second group of states, including South Dakota, where they cannot travel or reside without being stripped of their marital status and losing any protection as a legal family. Such a severe and

---

[11] Courts have applied rational basis review to same-sex marriage bans and found that the statutes were not rationally related to a legitimate government objective. *See, e.g.*, *Baskin*, 766 F.3d 648.

> deliberate penalty on interstate migration violates the right to
> travel in the most direct and fundamental way.

Docket 24 at 45-46 (italics in original). The burdens identified by plaintiffs,
however, apply equally to new citizens and existing citizens of South Dakota.
The plaintiffs who were citizens of South Dakota before getting married in
another state—Nancy and Jennie Rosenbrahn, Jeremy Coller and Clay
Schweitzer, Barb and Ashley Wright, and Greg Kniffen and Mark Church—are
treated the same as Lynn and Monica Serling-Swank, who were citizens of
another state and moved to South Dakota after getting married. In both
scenarios, South Dakota has refused to recognize the marriages because they
are same-sex marriages, not based on whether the individuals were citizens of
South Dakota.

The burdens put forth by plaintiffs also do not comport with other
instances in which courts have found a violation of the right to travel. For
example, the Supreme Court held that it was impermissible to deter the
migration of needy persons by imposing a year-long prohibition on welfare
assistance, *see Shapiro*, 394 U.S. 618, or on hospital care, *see Memorial
Hospital v. Maricopa County*, 415 U.S. 250 (1974). Nonetheless, when a new
resident receives benefits at the same level as other residents of the state, it is
not a penalty that those benefits are less generous than benefits in other
states. *See Minn. Senior Fed'n*, 273 F.3d at 810. Although plaintiffs in this case
may lose certain benefits when they move to South Dakota, the fact that they
are treated the same as existing residents proves that South Dakota's marriage
laws do not operate as a penalty on the right to travel. Therefore, plaintiffs have

27

failed to state a claim that is plausible on its face with respect to their right to travel claim, and the motion to dismiss is granted on that claim.

## CONCLUSION

In 1972, the Supreme Court dismissed the constitutional question presented in *Baker* as insubstantial. Given the subsequent developments recognized almost uniformly by federal courts following the Supreme Court's decision in *Windsor*, *Baker* is no longer binding authority. Although *Bruning* explained that sexual orientation is not a suspect class, it did not address whether marriage is a fundamental right. Thus, those cases do not foreclose relief on plaintiffs' due process and equal protection claims. But plaintiffs have not established any impairment of their right to travel. Accordingly, it is

ORDERED that the motion to dismiss (Docket 10) is denied with respect to Counts I and II, but granted with respect to Count III.

IT IS FURTHER ORDERED that, consistent with the court's order on defendants' motion to extend the deadline to respond to plaintiffs' motion for summary judgment (Docket 31), defendants will file a response to plaintiffs' motion for summary judgment on or before **November 24, 2014**. Plaintiffs will then have 14 days to reply.

Dated November 14, 2014.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE