UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JENNIE ROSENBRAHN,<br>NANCY ROSENBRAHN,<br>JEREMY COLLER,<br>CLAY SCHWEITZER,<br>LYNN SERLING-SWANK,<br>MONICA SERLING-SWANK,<br>KRYSTAL COSBY,<br>KAITLYNN HOERNER,<br>BARBARA WRIGHT,<br>ASHLEY WRIGHT,<br>GREG KNIFFEN, and<br>MARK CHURCH,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>DENNIS DAUGAARD, in his official<br>capacity as Governor;<br>MARTY JACKLEY, in his official<br>capacity as Attorney General;<br>DONEEN HOLLINGSWORTH, in her<br>official capacity as Secretary of Health;<br>TREVOR JONES, in his official capacity<br>as Secretary of Public Safety; and<br>CAROL SHERMAN, in her official<br>capacity as Brown County Register of<br>Deeds;<br><br>                    Defendants. | 4:14-CV-04081-KES<br><br><br><br>ORDER GRANTING PLAINTIFFS'<br>MOTION FOR SUMMARY JUDGMENT<br>AND DENYING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT |

Plaintiffs, Jennie and Nancy Rosenbrahn, Jeremy Coller and Clay

Schweitzer, Lynn and Monica Serling-Swank, Krystal Cosby and Kaitlynn

Hoerner, Barbara and Ashley Wright, and Greg Kniffen and Mark Church,

brought this action against defendants Dennis Daugaard, Marty Jackley,

Doneen Hollingsworth, Trevor Jones, and Carol Sherman in their official capacities, alleging that South Dakota's marriage laws violate the United States Constitution. Plaintiffs move for summary judgment. Defendants resist that motion and move for summary judgment in their favor. For the following reasons, the court grants plaintiffs' motion and denies defendants' motion.

**BACKGROUND**

The undisputed facts[1] are as follows:

South Dakota law prohibits same-sex marriage. SDCL 25-1-1 declares in pertinent part, "Marriage is a personal relation, between a man and a woman . . . ." SDCL 25-1-38 states that South Dakota recognizes as valid any marriage entered into in another state "except a marriage contracted between two persons of the same gender." In 2006, South Dakota voters approved Amendment C to the South Dakota Constitution, which reads:

> Only marriage between a man and a woman shall be valid or recognized in South Dakota. The uniting of two or more persons in a civil union, domestic partnership, or other quasi-marital relationship shall not be valid or recognized in South Dakota.

S.D. Const. art. 21 § 9.

---

[1] Ordinarily, when ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party and determines whether there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In this case, plaintiffs and defendants move for summary judgment, and both sides agree that the material facts in this action are undisputed. *See* Docket 24 at 18 ("Here, there are no material facts in dispute, and Plaintiffs are entitled to summary judgment as a matter of law."); Docket 41 at 10 ("It is clear from the Parties' filings that there are no material facts in dispute in this case. The constitutional issues before the Court solely involve issues of law.").

Plaintiffs are six same-sex couples impacted by South Dakota's marriage laws. Nancy and Jennie Rosenbrahn live in Rapid City, South Dakota. They have lived together for nearly thirty years and have numerous children and grandchildren. When they decided to marry, they were unable to obtain a marriage license in South Dakota. With the exception of being a same-sex couple, they meet all other requirements for a valid marriage in South Dakota. The Rosenbrahns were validly married in Minnesota, but South Dakota does not recognize their marriage. As a consequence, the Rosenbrahns state that they have endured indignity and humiliation. Additionally, Nancy may be unable to inherit the couple's mobile home park in the event Jennie dies, and the couple has incurred expenses associated with attempts to replicate the legal protections automatically extended to opposite-sex married couples.

Jeremy Coller and Clay Schweitzer also reside in Rapid City, South Dakota. Jeremy and Clay applied for a South Dakota marriage license and were denied. Except for the fact that they are a same-sex couple, Jeremy and Clay met all the requirements for marriage in South Dakota. They were married in Iowa in May 2014. The couple's home is titled in Jeremy's name, and Clay may be unable to inherit the home in the event of Jeremy's death as he would if the couple could be legally married. Jeremy and Clay also desire to be treated with the same dignity and respect as opposite-sex couples.

Lynn and Monica Serling-Swank live in Brandon, South Dakota, and have been in a same-sex relationship for over twelve years. They entered into a civil union in Connecticut in 2006, which was converted into a marriage in

2010. Subsequently, they moved to South Dakota to be closer to family. South Dakota does not recognize their marriage. As a result, Lynn was unable to visit Monica in the hospital, and the couple has incurred significant legal costs to protect their assets and plan for their future. They also wish to have their relationship afforded the same protections and recognition as opposite-sex relationships.

Krystal Cosby and Kaitlynn Hoerner reside in Aberdeen, South Dakota. They met in 2012 and have one child together. They also applied for a marriage license in South Dakota but were denied. The couple is legally qualified to marry under South Dakota law with the sole exception that they are a same-sex couple. They reported that the experience of being denied a marriage license was painful and humiliating. Additionally, South Dakota would not allow Kaitlynn to be listed as one of the parents on their daughter's birth certificate. As a result, Krystal and Kaitlynn are attempting to obtain a second-parent adoption, but the availability of that procedure is unclear given the couple's same-sex status.

Barbara and Ashley Wright also live in Aberdeen. They are a same-sex couple. They met in 2012, and were lawfully married in Minnesota on September 20, 2013. They have six children from previous relationships, and Ashley gave birth to another in the fall of 2014. Their marriage is not recognized by South Dakota. When opposite-sex married couples have a child, both spouses are presumed to be the child's parents, but because Barbara and Ashley are a same-sex couple Barbara is unable to be listed on the child's birth

4

certificate as a parent. The couple considers this unfair and demeaning. Barbara also reports that she was unable to change her driver's license to reflect her married name, which made it difficult to secure employment as a truck driver because Barbara's name on her social security card did not match the name on her driver's license.

Greg Kniffen and Mark Church live in Sioux Falls, South Dakota. They have been together as a same-sex couple for eleven years, and they were legally married in Minnesota on October 11, 2013. South Dakota does not recognize their marriage. Greg and Mark state that, in addition to the social significance of a recognized marriage, they face significantly higher inheritance tax rates if one of them dies than an inheriting opposite-sex spouse would face.

Defendants in this matter are all officials for the state of South Dakota and have all been named as defendants in their official capacities due to their roles in enforcing South Dakota's marriage laws. Dennis Daugaard is the governor of South Dakota and enforces and executes all laws of the state. Marty Jackley is the Attorney General and is the chief legal officer of the state. Doneen Hollingsworth is the Secretary of Health and oversees South Dakota's vital records registration system. Trevor Jones is the Secretary of Public Safety and oversees South Dakota's driver's license service centers. Carol Sherman is the Brown County Register of Deeds, whose duties include issuing marriage licenses.

On May 22, 2014, plaintiffs filed a complaint alleging that South Dakota's same-sex marriage ban deprives them of their constitutional rights to

equal protection, due process, and travel and seeking declarative and injunctive relief. Docket 1. Defendants moved to dismiss the complaint. Docket 10. The court granted the motion to dismiss with respect to plaintiffs' right to travel claim, but denied the remainder of the motion.[2] Docket 38. Pending are cross motions for summary judgment on the remaining claims by plaintiffs and defendants. Docket 20; Docket 43.[3]

## LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of

---

[2] The court found that *Baker v. Nelson*, 409 U.S. 810 (1972), was no longer binding authority in light of doctrinal developments. The court also found that *Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006), was confined to whether Nebraska's same-sex marriage ban violated a fundamental right to equal access to the political process and did not address the fundamental right to marriage. Docket 38. The court incorporates those findings and conclusions into this order.

[3] Also pending is defendants' motion for judicial notice of past South Dakota statutes on marriage and domestic relations and a table summarizing marriage laws around the United States. Docket 46. Plaintiffs do not object. Docket 48. Because the accuracy of those materials can be readily determined from sources whose accuracy cannot reasonably be questioned, the court takes judicial notice of the material submitted by defendants in conjunction with the motion at Docket 46. *See* Fed. R. Evid. 201.

6

specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## DISCUSSION

### I.   Jurisdiction

Defendants contend that this court is without jurisdiction over this matter because it concerns domestic relations. Docket 41 at 11-15. "[T]he domestic relations exception . . . divests the federal courts of the power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).

Defendants assert that the domestic relations exception is "[a]n exception to *federal question* jurisdiction[.]" Docket 41 at 12 (emphasis added). But the domestic relations exception only applies to this court's diversity jurisdiction, not its federal question jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 305-08 (2006); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 20-21 (2004) (Rehnquist, C.J., concurring) (clarifying that the "domestic relations exception . . . is a limiting construction of the statute defining federal diversity

7

jurisdiction") *abrogated in part on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); *United States v. Crawford*, 115 F.3d 1397, 1401-02 (8th Cir. 1997) (limiting the domestic relations exception to diversity jurisdiction cases involving divorce, alimony, and child custody). Because this case arises under the United States Constitution and 42 U.S.C. § 1983, this court has federal question jurisdiction. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Even if the domestic relations exception could be applied when the court has federal question jurisdiction, this case does not ask the court to issue a divorce, alimony, or child custody decree. *See Marshall*, 547 U.S. at 308 (quoting *Ankenbrandt*, 504 U.S. at 703-04) (stating that "only 'divorce, alimony, and child custody decrees' remain outside federal jurisdictional bounds"). The remedies requested by plaintiffs are not inextricably intertwined with any state-court domestic proceeding.[4] Contrary to defendants' unsupported assertion, the fact that states may generally regulate marriage does not automatically include marriage in the domestic relations exception. Because this case presents constitutional claims, it is not a domestic relations case and that exception is inapplicable. *See Marie v. Moser*, 2014 WL 5598128, at *10 (D.

---

[4] *See Wallace v. Wallace*, 736 F.3d 764, 767 (8th Cir. 2013); *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994). Here, the court is not aware of any state-court proceeding on this issue with which this court could become entangled, and the remedy requested would not relitigate a divorce, alimony, or child custody decree.

Kan. Nov. 4, 2014); *McGee v. Cole*, 993 F. Supp. 2d 639, 645-46 (S.D.W. Va. 2014).

Defendants assert that "Plaintiffs' challenge here directly *interferes* with state marriage laws" and that such interference is impermissible under the Tenth Amendment. Docket 41 at 14 (italics in original). States have the power to regulate marriage, but it is well settled that the state's power is not absolute and is subject to constitutional limitations. *United States v. Windsor*, 133 S. Ct. 2675, 2691 (2013); *Loving v. Virginia,* 388, U.S. 1, 7 (1967). Therefore, the Tenth Amendment does not bar plaintiffs' constitutional challenges.

Defendants attempt to combine the domestic relations exception and the Tenth Amendment to create an exception to jurisdiction in which only a "fundamental federal question" can provide sufficient grounds for a challenge to state marriage laws. *See* Docket 49 at 3. This argument lacks supporting authority and is based on a misapplication of both the domestic relations exception and the Tenth Amendment. This court has jurisdiction over constitutional challenges to state laws, which challenges are federal questions.[5]

---

[5] Defendants suggest that these constitutional issues are not fundamental and are not subject to review in federal court. *See* Docket 49 at 5 ("[T]he Court does not have before it a fundamental federal question. As such, the constitutional issues raised by Plaintiffs are wholly state issues reserved to the State and its courts by the Tenth Amendment."). To the extent defendants rely on *Baker* for the proposition that there is no substantial federal question here, this court has already rejected that argument. *See* Docket 38 at 10-18. As noted above, this court has jurisdiction over constitutional and federal statutory claims. 28 U.S.C. § 1331.

## II.    Due Process

"[A]ll fundamental rights comprised within the term liberty are protected by the Federal Constitution from invasion by the States." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992) (quotation omitted). The Due Process Clause "forbids the government to infringe certain fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (emphasis in original) (internal quotations omitted). Plaintiffs argue that they have a fundamental right to marriage and to choose their spouses, and that South Dakota law deprives them of that fundamental right. Defendants argue that there is no fundamental right to same-sex marriage, and South Dakota's marriage laws bear a rational relationship to a legitimate government purpose.

### A.    Fundamental Right

A fundamental right is a right that is "objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). In evaluating a substantive due process claim, a court must provide a "careful description of the asserted fundamental liberty interest" to minimize the subjectivity inherent in judicial review of due process. *Id.* at 721.

Marriage is a fundamental right. *Loving*, 388 U.S. at 12 (quoting *Skinner v. State of Okla. ex rel. Williamson*, 316 U.S. 535, 541 (1942)) ("Marriage is one

10

of the 'basic civil rights of man,' fundamental to our very existence and survival."). "Although *Loving* arose in the context of racial discrimination, prior and subsequent decisions of [the Supreme] Court confirm that the right to marry is of fundamental importance for *all individuals*." *Zablocki v. Redhail*, 434 U.S. 347, 384 (1978) (emphasis added).

Neither side disputes that the right to marriage is a fundamental right. Instead, defendants contend that the right to marriage is distinct from a right to same-sex marriage because marriage has traditionally been understood to be between a man and a woman. Docket 41 at 18-26. Plaintiffs argue that the right to marriage is not limited by the person attempting to exercise that right, and that the right to marriage necessarily encompasses the right to same-sex marriage. Docket 24 at 20-24.

### 1.   *Windsor*

Plaintiffs and defendants both claim that *Windsor* supports their respective positions and resolves this case. Both sides in this case point to the aspects of *Windsor* that supports their respective positions but fail to account for the limitations found in *Windsor*. This court believes that *Windsor* recognizes that the sexual and moral choices of homosexual citizens enjoy constitutional protection. *See Windsor*, 133 S. Ct. at 2694 (citing *Lawrence v. Texas*, 539 U.S. 558 (2003)). But *Windsor* does not resolve the question before this court because it limited its holding to marriages already permitted by state law and stopped short of requiring that states recognize same-sex marriage under the Constitution. *Id.* at 2696 ("This opinion and its holding are confined

11

to those lawful marriages.") Because *Windsor* does not resolve the question presented in this case, the court turns to other Supreme Court precedent for guidance.

### 2.    Supreme Court Precedent

Other Supreme Court cases addressing the right to marriage have defined that right broadly. *See Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-40 (1974) ("This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment."). The Supreme Court has struck down laws that limited the right to marriage and has done so without qualifying or further specifying that right.

In *Loving*, the Supreme Court declared unconstitutional a law prohibiting interracial marriage, but in doing so the Court only discussed a fundamental right to marriage, not a fundamental right to interracial marriage. *Loving*, 388 U.S. at 12. Similarly, in *Zablocki*, the Supreme Court considered a Wisconsin statute that required any resident of that state who had children that were not currently in the resident's custody to obtain a court order before marrying. *Zablocki*, 434 U.S. at 375. The statute further specified that courts should not grant permission to marry unless the resident was current on any child support obligation. The Supreme Court found that such a limitation burdened the fundamental right to marry. The Court did not limit the right based on the categorization of the individual attempting to exercise that right. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court struck down a regulation

12

prohibiting inmates from marrying without the approval of the prison superintendent, again without reference to the characteristics upon which marriage was denied. These decisions make clear that the right to marriage is a fundamental right, and equally important for this case, they demonstrate that the right to marriage is not broken down into sub-rights depending on the individual attempting to exercise that right.

The right to marriage is related to other constitutionally protected rights, such as the right to privacy. *See Zablocki*, 434 U.S. at 384 (citing *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965)). Personal choices about marriage and other intimate decisions are "central to personal dignity and autonomy" protected by the Fourteenth Amendment. *Planned Parenthood of Se. Pa., 505* U.S. at 851. The right to marriage also encompasses an associational right " 'of basic importance in our society' [which is] sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 376 (1971)). The right to make individual moral and sexual choices, particularly with respect to sexual orientation, also enjoys constitutional protection. *See Windsor*, 133 S. Ct. at 2694 (citing *Lawrence*, 539 U.S. 558). The fact that marriage is intertwined with other fundamental constitutional rights is consistent with the broad interpretation the Supreme Court has given to the right to marriage.

### 3.  Lower Court Decisions

The majority of courts that have addressed the issue of the constitutionality of same-sex marriage bans after *Windsor* have found that same-sex marriage bans deprive homosexual couples of their fundamental constitutional right to marriage.[6] A few courts have reached the opposite conclusion.[7] With this legal framework in mind, the court turns to defendants' arguments.

---

[6] *See Latta v. Otter*, 771 F.3d 456, 477 (9th Cir. 2014) (Reinhardt, J., concurring) ("[T]he fundamental right to marriage . . . is properly understood as including the right to marry an individual of one's choice. That right applies to same-sex marriage just as it does to opposite-sex marriage."); *Bostic v. Schaefer*, 760 F.3d 352, 376-77 (4th Cir. 2014); *Kitchen v. Herbert*, 755 F. 3d 1193, 1209-18 (10th Cir. 2014); *Campaign for S. Equal. v. Bryant*, No. 3:14-CV-818-CWR-LRA, 2014 WL 6680570, at *11 (S.D. Miss. Nov. 25, 2014) ("Relying on Supreme Court case law, the court concludes that there is no new fundamental right at issue. The question is not whether there is a right to same-sex marriage; it is whether gay and lesbian people, like any other group of people, have the freedom of choice to marry.") (internal quotations omitted); *Jernigan v. Crane*, No. 4:13-cv-00410 KGB, 2014 WL 6685391, at *16-17 (E.D. Ark. Nov. 25, 2014); *Lawson v. Kelly*, No. 14-0622-CV-W-ODS, 2014 WL 5810215, at *6-8 (W.D. Mo. Nov. 7, 2014); *Brenner v. Scott*, 999 F. Supp. 2d 1278, 1288-89 (N.D. Fla. 2014); *Baskin v. Bogan*, 12 F. Supp. 3d 1144, 1156-57 (S.D. Ind. 2014), *aff'd*, 766 F.3d 648 (7th Cir. 2014); *Wolf v. Walker*, 986 F. Supp. 2d 982, 1001 (W.D. Wis. 2014) ("If the scope of the right to marry is broad enough to include even those whose past conduct suggests an inclination toward violating the law and abdicating responsibility, then it is difficult to see why it should not be broad enough to encompass same-sex couples as well."), *aff'd sub nom. Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014); *Whitewood v. Wolf*, 992 F. Supp. 2d 410, 423-24 (M.D. Pa. 2014) ("[T]his Court is not only moved by the logic that the fundamental right to marry is a personal right to be exercised by the individual, but also rejects Defendants' contention that concepts of history and tradition dictate that same-sex marriage is excluded from the fundamental right to marry. The right Plaintiffs seek to exercise is not a new right, but is rather a right that these individuals have always been guaranteed by the United States Constitution."); *Latta v. Otter*, 19 F. Supp. 3d 1054, 1068-72 (D. Idaho 2014), *aff'd*, 771 F.3d 456 (9th Cir. 2014); *De Leon v. Perry*, 975 F. Supp. 2d 632, 658-59 (W.D. Tex. 2014);

### 4.   Defendants' Arguments

#### a.   Narrow Definition Required

Defendants contend that the requirement found in *Glucksberg,* that substantive due process rights must be carefully described, compels the conclusion that the right at stake in this case is the right to same-sex marriage. Docket 41 at 18; *see also Robicheaux v. Caldwell*, 2 F. Supp. 3d 910, 922 & n.13 (E.D. La. 2014). This court disagrees and instead agrees with the concurring opinion of Judge Reinhardt that in the substantive due process context, " 'careful' does not mean 'cramped.' " *See Latta*, 771 F.3d at 477 (Reinhardt, J., concurring). "A careful description means only an accurate one, determined at the appropriate level of generality. . . . And *Loving, Zablocki*, and *Turner* applied the right to marry at that level of generality . . . ." *Brenner*, 999 F. Supp. 2d at 1288. In *Lawrence*, the Supreme Court overruled *Bowers v. Hardwick*, 478 U.S. 186 (1986), because, in part, *Bowers* "misapprehended the

---

*Bostic v. Rainey*, 970 F. Supp. 2d 456, 472-73 (E.D. Va. 2014) ("These laws limit the fundamental right to marry to only those Virginia citizens willing to choose a member of the opposite gender for a spouse. These laws interject profound government interference into one of the most personal choices a person makes."), *aff'd sub nom. Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014); *Kitchen v. Herbert*, 961 F. Supp. 2d 1181, 1202-03 (D. Utah 2013), *aff'd*, 755 F. 3d 1193 (10th Cir. 2014).

[7] *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014); *Robicheaux v. Caldwell*, 2 F. Supp. 3d 910, 922 & n.13 (E.D. La. 2014); *Love v. Beshear*, 989 F. Supp. 2d 536, 544 (W.D. Ky. 2014) (explaining a concern for the court to hold "that the fundamental right to marry encompasses same-sex marriage would be a dramatic step that the Supreme Court has not yet indicated a willingness to take" but concluding that finding "is unnecessary to the ultimate result in this action" because the court found the same-sex marriage ban unconstitutional on other grounds).

claim of liberty there presented to it" by defining the issue too narrowly.
*Lawrence*, 539 U.S. at 567. Defendants' interpretation of the right at stake as a
right to same-sex marriage makes the same error by defining the right to
marriage too narrowly and in a manner inconsistent with *Loving*, *Zablocki*, and
*Turner*. *See Wolf*, 986 F. Supp. 2d at 1001 ("Accordingly, I conclude defendants
are making the same mistake as the Court in *Bowers* when they frame the
question in this case as whether there is a 'right to same-sex marriage' instead
of whether there is a right to marriage from which same-sex couples can be
excluded.").

### b.    Public Policy Debate

Defendants also argue that a decision permitting same-sex marriage
issuing from this court is improper because it removes the question from
public debate. *See* Docket 41 at 17 (citing *Glucksberg*, 521 U.S. at 720). But
plaintiffs need not resort to public opinion to secure their fundamental
constitutional rights, as the Supreme Court has explained:

> The very purpose of a Bill of Rights was to withdraw certain
> subjects from the vicissitudes of political controversy, to place
> them beyond the reach of majorities and officials and to establish
> them as legal principles to be applied by the courts. One's right to
> life, liberty, and property, to free speech, a free press, freedom of
> worship and assembly, and *other fundamental rights* may not be
> submitted to vote; they depend on the outcome of no elections.

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) (emphasis
added). The protection of those rights is a duty of the courts, not of the
electorate. *But see DeBoer*, 772 F.3d at 395-96 (arguing that the democratic

16

process is the proper mechanism to extend the right to marriage to same-sex couples).

### c.    Tradition

Defendants contend that *Loving*, *Zablocki*, and *Turner* simply accepted the traditional definition of opposite-sex marriage, to which South Dakota has always adhered,[8] and those cases "provide no legal support for the conclusion that same-sex marriage is part of the fundamental right to marriage." Docket 41 at 24. This is not persuasive. "History and tradition are the starting point but not in all cases the ending point of the substantive due process inquiry." *Lawrence*, 539 U.S. at 572 (alteration and quotations omitted). In *Lawrence*, the Supreme Court overruled *Bowers*, even though there was no history of a protected right to homosexual intimate conduct. *Loving* overturned Virginia's anti-miscegenation statute even though such laws were part of the traditional definition of marriage in some states. *Baskin*, 766 F.3d at 666 ("The state's argument from tradition runs head on into [*Loving*] since the limitation of marriage to persons of the same race was traditional in a number of states when the Supreme Court invalidated it."). Thus, the fact that marriage was traditionally viewed in a certain way does not insulate that right from constitutional challenges.[9] *See Kitchen*, 755 F.3d at 1217-18.

---

[8]  *See* Docket 46 and attachments.

[9] If traditional definitions of marriage were unassailable, marriage would look much different than it does today. "[W]ithin the past century, married women had no right to own property, enter into contracts, retain wages, make decisions about children, or pursue rape allegations against their husbands."

Furthermore, Supreme Court cases have repeatedly refused to describe a right by incorporating the classification of a group trying to exercise that right. *See Latta*, 771 F.3d at 477-78 (Reinhardt, J., concurring) ("In each case, the Supreme Court referred to—and considered the historical roots of—the general right of people to marry, rather than a narrower right defined in terms of those who sought the ability to exercise it."). As the Fourth Circuit observed:

> [*Loving*, *Zablocki*, and *Turner*] do not define the rights in question as 'the right to interracial marriage,' 'the right of people owing child support to marry,' and 'the right of prison inmates to marry.' Instead, they speak of a broad right to marry that is not circumscribed based on the characteristics of the individuals seeking to exercise that right.

*Bostic*, 760 F.3d at 376.

Even though *Loving* and *Zablocki* did not specifically discuss whether the right to marriage includes same-sex marriage,[10] the broad and unqualified discussion of the right to marriage undermines defendants' assertion that the right at issue is a narrower right to same-sex marriage. Moreover, *Loving*, *Zablocki*, and *Turner* provide no legal support for describing the right at issue as anything other than the fundamental right to marriage. Therefore,

---

*Latta*, 771 F.3d at 475. *See also id.* at 487-88 (Berzon, J., concurring) (discussing traditional aspects of marriage such as coverture and a husband's right to chastise his wife, "that is, to beat her short of permanent injury").

[10] Defendants argue that the Supreme Court's summary dismissal in *Baker*, which came after *Loving*, indicates that *Loving* did not extend to same-sex marriage. Docket 41 at 23. This court already discussed in its denial of defendants' motion to dismiss the reasons why *Baker* is no longer authoritative. Docket 38 at 10-18. Furthermore, *Loving* and *Zablocki* did not address same-sex marriage because those cases did not present that issue.

defendants' argument that the court should limit the fundamental right to marriage based on the traditional understanding of that right is contrary to Supreme Court precedent.

### d.    Slippery Slope

Defendants also argue that defining the right in this case as a fundamental right to marriage calls into question the ability of the state to regulate marriage based on polygamy and incest. *See, e.g.*, Docket 41 at 19. Regulations on polygamy or incest are not at issue in this case. Additionally, this argument is logically flawed and distracts from the distinct issue presented by same-sex marriage bans. In *Zablocki*, the Supreme Court distinguished a complete prohibition on marriage from reasonable state regulations on marriage:

> By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with the decisions to enter into the marital relationship may legitimately be imposed.

*Zablocki*, 434 U.S. at 386.[11] For example, anti-nepotism policies indirectly relate to marriage but do not directly and substantially interfere with the

---

[11] In a concurrence arguing that due process, not equal protection, was the proper framework of analysis, Justice Stewart wrote that "[s]urely, for example, a State may legitimately say that no one can marry his or her sibling, that no one can marry who is not at least 14 years old, that no one can marry without first passing an examination for venereal disease, or that no one can marry who has a living husband or wife. But, just as surely, in regulating the intimate human relationship of marriage, there is a limit beyond which a State may not constitutionally go." *Zablocki*, 434 U.S. at 684 (Stewart, J., concurring). The viability of state-imposed limitations on marriage based on polygamy, incest, and age of consent seems to be questioned only by those

exercise of that right. *Lawson*, 2014 WL 5810215, at *7 (citing *Parsons v. Del Norte Country*, 728 F.2d 1234 (9th Cir. 1984)).

In the years following *Loving*, *Zablocki*, and *Turner*, states have maintained laws on polygamy, incest, age of consent, and other marriage-related issues despite the Supreme Court's classification of marriage as a fundamental right. Importantly, the Supreme Court has never held that there is a protected privacy or liberty interest in polygamy or incest, but the Supreme Court has extended constitutional protection to same-sex intimate conduct and relationships.[12] This court is not persuaded that adhering to long-standing Supreme Court precedent and defining the right at issue here as a fundamental right to marriage will curtail South Dakota's ability to otherwise regulate marriage in ways that do not interfere with constitutionally protected interests.

---

attempting to find a reason why same-sex marriage could undermine the institution of marriage as a whole.

   [12] *See Kitchen*, 755 F.3d at 1229 ("Appellants also suggest that today's ruling will place courts on a slippery slope towards recognizing other forms of currently prohibited marriages. Although we have no occasion to weigh in on the validity of laws not challenged in this case, same-sex marriage prohibitions differ in at least one key respect from the types of marriages the appellants identify: Unlike polygamous or incestuous marriages, the Supreme Court has explicitly extended constitutional protection to intimate same-sex relationships, *see Lawrence*, 539 U.S. at 567, and to the public manifestations of those relationships, *Windsor*, 133 S. Ct. at 2695. Our holding that plaintiffs seek to exercise a fundamental right turns in large measure on this jurisprudential foundation that does not exist as to the hypothetical challenges identified by appellants."). Furthermore, laws banning polygamy and incest only prevent people from marrying in certain limited instances, whereas South Dakota's ban on same-sex marriage prevents homosexual South Dakotans from marrying *at all*. *See Lawson*, 2014 WL 5810215, at *7; *Latta*, 19 F. Supp. 3d at 1072.

Pertinent decisions from the Supreme Court are clear and consistent that the right to marriage is a fundamental right. The Supreme Court has also refused to describe the right to marriage by reference to the individuals wishing to exercise that right. In keeping with the decisions of most of the federal courts that have addressed this issue, this court agrees with plaintiffs that the question in this case is whether same-sex couples, like opposite-sex couples, may marry. Thus, the right at stake is not a new right to same-sex marriage, as defendants contend. Instead, the substantive due process right is the right to marry, which right is fundamental. South Dakota's marriage laws significantly interfere with this fundamental right by preventing same-sex couples from marrying and refusing to recognize out-of-state same-sex marriages. Because strict scrutiny applies to analyze deprivations of fundamental rights claims, the court will apply strict scrutiny here. *Reno*, 507 U.S. at 301-02.

## B. **Strict Scrutiny**

Under strict scrutiny, a law will survive review only if it is narrowly tailored to serve a compelling state interest. *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003); *Glucksberg*, 521 U.S. at 721. Defendants bear the burden of demonstrating that South Dakota's laws banning same-sex marriage meet this exacting standard. *See Fisher v. Univ. of Tex. at Austin*, 133 S. Ct. 2411, 2420 (2013). Additionally, the state's "justification must be genuine, not hypothesized or invented *post hoc* in response to litigation." *United States v. Virginia*, 518 U.S. 515, 533 (1996).

21

Defendants assert the following justifications for South Dakota's same-sex marriage ban: (1) channeling procreation into marriage; and (2) proceeding with caution. Docket 41 at 36-47. Defendants do not provide any evidence that either of those interests was an actual motivation behind South Dakota's same-sex marriage ban. Furthermore, defendants only argue that those asserted interests are rationally related to South Dakota's same-sex marriage laws and do not argue they are sufficient under any heightened standard of review. Nonetheless, the court will address each asserted interest.

Defendants argue that South Dakota has an interest in "encourag[ing] heterosexual couples—the couples most likely to have children—to accept the obligations and liabilities associated with a state marriage laws [sic] so that children, and particularly unplanned children, are not abandoned and required to be supported by the public fisc." Docket 41 at 39. Defendants make no showing that keeping children from being supported by the state is a compelling state interest. Even if the court assumes that interest is compelling, defendants essentially concede that South Dakota's laws are not narrowly tailored to that interest by arguing that "the State does not have to draw perfect lines" and that the general classification is sufficient. Docket 41 at 43. South Dakota's same-sex marriage ban is not narrowly tailored to serve the state interest of channeling accidental reproduction into two-parent households because it does not explain why infertile or otherwise non-procreative heterosexual couples are allowed to marry and fails to provide a reason why children adopted or conceived—even if they are not conceived accidentally—by

22

same-sex couples would not be better off if raised by a married same-sex couple. *See, e.g., Baskin*, 766 F.3d at 660-65 (rejecting this justification under the far less demanding rational-basis standard); *Bishop v. U.S. ex rel. Holder*, 962 F. Supp. 2d 1252, 1290-93 (D. Okla. 2014) (holding that "the state's exclusion of only same-sex couples in this case is so grossly underinclusive that it is irrational and arbitrary").

Defendants also argue that "[t]he State Legislature and electorate could also rationally believe same-sex marriage would fundamentally alter a basic societal structure, would have an impact on the public fisc by extending state marriage benefits to a new group of couples, and that changes should proceed with caution." Docket 41 at 44. But defendants fail to provide any argument showing why proceeding with caution is a compelling state interest. If accepted as a compelling state interest, this justification would support every existing law.[13] Even if it were compelling, defendants have not shown what additional information South Dakota needs to gather, why preserving the status quo is the only means of avoiding unidentified future harm, and how long South Dakota same-sex couples should wait to enjoy their fundamental constitutional right to marriage.[14] Given that lack of detail, South Dakota's marriage laws are not narrowly tailored to this asserted state interest.[15]

---

[13] This "go slow" justification did not prevent the Supreme Court from invalidating state laws banning interracial marriage in *Loving* or state laws banning homosexual sex acts in *Lawrence*. *See Baskin*, 766 F.3d at 669-70.

[14] South Dakota amended its Constitution to prohibit same-sex marriage. Therefore, it appears unlikely that the legislature or electorate is simply waiting to measure the impact of same-sex marriage in other states before deciding

Neither justification provided by the state meets the demanding standard of strict scrutiny. Because defendants have not shown that South Dakota's laws banning same-sex marriage are narrowly tailored to serve a compelling state interest, those laws impermissibly deny plaintiffs their fundamental right to marry in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### III.    Equal Protection

The Fourteenth Amendment requires that states afford all citizens the equal protection of the laws. U.S. Const. amend. XIV. "As a threshold matter, in order '[t]o state an equal protection claim, [a plaintiff] must have established that he was treated differently from others similarly situated to him.' " *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) (quoting *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998)). If a statute treats citizens differently based on a suspect classification or involves a fundamental right, the challenged law receives heightened scrutiny. All other classifications will be upheld "if there is a rational relationship between the disparity of treatment

---

whether to allow it in South Dakota. Instead, the act of incorporating the same-sex marriage ban into the state Constitution sends the message that South Dakota's same-sex marriage ban is not a temporary state of affairs but rather a fundamental statement of the state's public policy.

[15] Defendants make the related argument that this fundamental policy decision should be made through the democratic process. Docket 41 at 46-47. That is not a justification for the existence of the law. As noted above, vindication of constitutional rights is not an issue for state legislatures or the ballot box. *Barnette*, 319 U.S. at 638.

24

and some legitimate governmental purpose." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993).

If a classification "impinge[s] upon the exercise of a fundamental right," the Equal Protection Clause requires "the State to demonstrate that its classification has been precisely tailored to serve a compelling governmental interest." *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982) (quotation omitted). For reasons stated with respect to plaintiffs' due process claim, South Dakota's same-sex marriage ban deprives same-sex citizens of a fundamental right, and that classification is not narrowly tailored to serve a compelling state interest. Thus, South Dakota's same-sex marriage ban violates the Equal Protection Clause.[16]

## IV.     Stay Pending Appeal

Defendants request a stay pending appeal. Docket 49 at 13-14. Plaintiffs oppose such a stay. Docket 47 at 23. Neither party cites the authority under which a stay pending appeal may be granted or denied. Federal Rule of Civil Procedure 62 sets out the rule for when a decision may be stayed.

A four-part test governs stays pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

---

[16] The court has determined that strict scrutiny is appropriate because South Dakota's same-sex marriage ban impinges upon a fundamental right. Thus, the court need not address plaintiffs' arguments that South Dakota's same-sex marriage ban should receive heightened scrutiny based on gender, sexual orientation, or animus.

proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "[A] stay will be granted if the balance of equities favors this action." 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2904 (3d ed.) (hereinafter Wright and Miller). The moving party bears the burden of establishing these factors. *Nken v. Holder*, 556 U.S. 418, 434 (2009). "[T]his standard is a heavy one, more commonly stay requests will not meet this standard and will be denied." 11 Wright and Miller § 2904.

Defendants do not argue that they are likely to succeed on the merits. Nonetheless, cases raising substantial difficult or novel legal issues may merit a stay. *Id.* Because the Eighth Circuit has not ruled on this issue, this case presents novel and substantial legal questions, which weighs in favor of a stay. Defendants have not made a showing that they would be irreparably injured absent a stay so the second factor does not weigh in favor of a stay. The ongoing denial of a constitutional right constitutes irreparable harm to plaintiffs, which weighs against issuing a stay. But plaintiffs would also be harmed if this court did not issue a stay and the Eighth Circuit reversed this decision. There is a public interest in requiring state officials to comply with the Constitution. In this case, however, an additional public interest is present. There is a substantial public interest in having stable marriage laws and avoiding uncertainty produced by a decision that is issued and subsequently stayed by an appellate court or overturned. "Encouraging a rush to the marriage officiant, in an effort to get in before an appellate court enters a stay, serves the interests of nobody." *Brenner*, 999 F. Supp. 2d at 1292. Both district

26

courts in the Eighth Circuit to rule on same-sex marriage bans have stayed their decisions. Because this case presents substantial and novel legal questions, and because there is a substantial public interest in uniformity and stability of the law, this court stays its judgment pending appeal.

## CONCLUSION

In *Loving*, the Supreme Court addressed a traditionally accepted definition of marriage that prohibited Mildred Jeter and Richard Loving from marrying. Because Virginia's laws deprived that couple of their fundamental right to marriage, the Court struck down those laws. Little distinguishes this case from *Loving*. Plaintiffs have a fundamental right to marry. South Dakota law deprives them of that right solely because they are same-sex couples and without sufficient justification. Accordingly, it is

ORDERED that plaintiffs' motion for summary judgment (Docket 20) is granted, and defendants' motion for summary judgment (Docket 43) is denied.

IT IS FURTHER ORDERED that SDCL 25-1-1, SDCL 25-1-38, Article 21, § 9 of the South Dakota Constitution, and any other provision of state law that precludes people from marrying, or refuses to recognize an existing marriage, solely because the individuals are of the same gender are unconstitutional because they violate the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.

IT IS FURTHER ORDERED that defendants are enjoined from enforcing those laws or otherwise declining to issue a marriage license solely because the applicants are of the same gender.

27

IT IS FURTHER ORDERED that a separate judgment will be entered and the effects of that judgment will be stayed until the judgment is final.

Dated January 12, 2015.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

28